Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EDUARDO GUILBE CRESPO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202500007 | REVISIÓN JUDICIAL Procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: P676-12635<br><br>Sobre: Reconsideración |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Álvarez Esnard[1] y el Juez Monge Gómez.[2]

Álvarez Esnard, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 30 de abril de 2025.

Comparece ante nos el señor Eduardo Guilbe Crespo ("señor Guilbe Crespo" o "el Recurrente"), miembro de la población correccional, por derecho propio e *in forma pauperis* mediante *Revisión Judicial* recibida el 3 de enero de 2025. Nos solicita que revoquemos la determinación no favorable emitida el 18 de noviembre de 2024, notificada el 3 de diciembre del mismo año, por la Oficina de Programas y Servicios del Departamento de Corrección y Rehabilitación de Puerto Rico ("DCR" o "la agencia"). Por virtud de tal dictamen, el DCR resolvió que el Recurrente no era favorable para participar del Proyecto para la Pre-Reinserción a la Libre Comunidad debido a que su plan de salida era en el municipio de Ponce, municipio en que residen los familiares de la víctima, por tanto no cualifica para dicho programa.

Por los fundamentos que expondremos a continuación, **revocamos** el dictamen recurrido.

---

[1] Conforme a la OATA-2024-086 del 19 de julio de 2024, se designó a la Jueza Álvarez Esnard en sustitución de la exjueza Méndez Miró.

[2] Conforme a la OATA-2025-019 del 10 de febrero de 2025, se designó al Hon. José J. Monge Gómez en sustitución de la Hon. Camille Rivera Pérez.

**I.**

Surge del expediente que el señor Guilbe Crespo se encuentra cumpliendo una condena de ciento diecinueve (119) años tras, el 17 de junio de 2005, el Tribunal de Primera Instancia dictara *Sentencia* contra el Recurrente por asesinato en primer grado en el caso J VI2004G0105 y por violación al Artículo 5.04 de la entonces vigente, Ley de Armas de Puerto Rico, Ley Núm. 404-2000, según enmendada, 25 LPRA sec. 458c (Edición 2016), en el caso J LA2004G0654.[3] Así pues, se desprende de los autos que, en noviembre de 2023, el señor Guilbe Crespo presentó una propuesta para participar en Proyecto de Pre-Reinserción del DCR.[4] Posteriormente, el 23 de mayo de 2024, notificada al Recurrente el 14 de junio del mismo año, la Secretaría Auxiliar de la División de Programas y Servicios del DCR emitió una decisión en la cual se pospuso la evaluación del Recurrente para la participación del mencionado proyecto.[5] En consecuencia, el caso se refirió para "evaluación adicional para cumplir con los [sic] dispuesto en el Plan de Reorganización #2-2011 en sus artículos 17, 18 y 19 de los derechos de las víctimas de delitos en los procesos relacionados con los Programas de Desvíos y Comunitarios".[6]

Insatisfecho con esa determinación, el señor Guilbe Crespo compareció ante esta Curia e impugnó la decisión de la agencia en el caso KLRA202400366. En aquella ocasión, mediante *Sentencia* emitida el 26 de septiembre de 2024, un Panel Hermano desestimó el recurso por falta de jurisdicción pues no había una determinación final sujeta a revisión judicial. En el ínterin, a nivel del proceso

---

[3] Véase, Apéndice del Procurador General, pág. 4.
[4] Véase, Apéndice del Recurrente, Anejo IV, pág. 2. Asimismo, se desprende del Apéndice del Procurador, pág. 7, que el Recurrente fue recomendado para el programa de Pre-Reinserción por el TSS Doel Cruz García el 25 de septiembre de 2023.
[5] Véase, Apéndice del Recurrente, Anejo II.
[6] *Íd.*

administrativo, el caso fue referido a la Oficina de Víctimas de Delitos para evaluación el 27 de agosto de 2024.[7]

Así las cosas, el 6 de noviembre de 2024, el DCR emitió documento intitulado *Resumen de Hallazgo Entrevista a V[í]ctima.*[8] De este se desprende que los padres de la víctima enviaron un comunicado en el cual se opusieron a que el Recurrente estuviera en la libre comunidad, **aunque no expresaron sentir riesgo o temer por su vida o seguridad**. Asimismo, el *Resumen de Hallazgo Entrevista a V[í]ctima* destacó que la residencia propuesta por el Recurrente en su plan de salida era en el mismo Municipio en donde residían los padres de la víctima. Por este motivo, el 3 de diciembre de 2024, el señor Guilbe Crespo fue notificado de que el DCR determinó como *no favorable* su caso para participar en el Programa de Pre- Reinserción.[9] Específicamente, la determinación dispuso que "[e]l 18 de noviembre de 2024, fue evaluado el caso para el Programa de Pre-Reinserción a la libre comunidad, para el Centro Nuevas Oportunidades de Arecibo" y las razones para la denegatoria fue que "[e]l MPC deberá someter otro plan de salida tomando en consideración que debe ser fuera del Municipio de Ponce".[10]

Insatisfecho con el resultado, el 3 de enero de 2025, esta Curia recibió el recurso de epígrafe el cual contiene el presente señalamiento de error:

> Erró el DCR por conducto de la División de la Secretaria Auxiliar Janette Rodríguez Robles al emitir una resolución no favorable esto pese a que ya se había certificado que la evaluación era positiva y que lo que faltaba era la notificación a las víctimas cual se realizó y la misma fue positiva por cuanto el plan de salida fue presentado a la Sra. Minthia Torres para que actualizara la dirección cual al no ser realizada es una muestra de negligencia por parte de la agencia para entorpecer el proceso.

---

[7] Véase, Apéndice del Procurador General, pág. 1.
[8] Íd., págs. 2-3.
[9] Véase, Apéndice del Recurrente, Anejo I.
[10] *Íd.*

El 15 de enero de 2025, esta Curia emitió *Resolución* en la que, entre otros asuntos, le concedió un término de treinta (30) días para que el DCR expusiera su oposición al recurso. En cumplimiento con lo ordenado, el 18 de febrero de 2025, la agencia recurrida, por conducto de la Oficina del Procurador General de Puerto Rico presentó *Escrito en Cumplimiento de Resolución*, mediante el cual reiteró que el DCR resolvió conforme a derecho. En específico adujo que, conforme a las leyes y reglamentos aplicables, se debía tomar en consideración la opinión de la víctima para conceder la participación en este proyecto a un miembro de la población correccional.

Posteriormente, el 4 de marzo de 2025, emitimos *Resolución* mediante la cual solicitamos al DCR a que, en un término de cinco (5) días, aclarara porque no debía aplicarse al presente caso el Artículo 16 del Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, ("Plan de Reorganización") según enmendado, 3 LPRA Ap. XVIII Art. 16 (supl. 2024). El precitado artículo dispone lo siguiente:

> No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas: a) toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:
> 1) Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil;
> 2) violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "Ley de Sustancias Controladas de Puerto Rico", excepto las violaciones al Artículo 404 de dicha Ley; y
> 3) violaciones a la Ley Núm. 134 de 28 de junio de 1969, según enmendada, conocida como la "Ley de Explosivos de Puerto Rico";
> 4) **toda persona convicta por delito grave de primer grado** (Énfasis nuestro).

Oportunamente, el 14 de marzo de 2025, la agencia presentó *Moción en Cumplimiento de Resolución*, en la que expresó que el Proyecto para la Pre-Reinserción no constituye un programa de desvío, por tanto, no es de aplicación el citado Artículo 16 del Plan

de Reorganización. Con el beneficio de la comparecencia ambas partes, procedemos a resolver la controversia ante nuestra consideración.

## II.

### A. *Estándar de Revisión Judicial de Determinaciones Administrativa*

"Es norma de derecho claramente establecida que los tribunales apelativos, al momento de revisar las determinaciones administrativas, están obligados a conceder deferencia a las decisiones de las agencias en consideración a que estas poseen la experiencia y el conocimiento especializado sobre los asuntos que se les han delegado". *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 215 DPR___(2025) 2025 TSPR 70, pág. 10. Las determinaciones de una agencia administrativa gozan de una presunción de legalidad y corrección. *Transp. Sonnell v. Jta. Subastas ACT*, 214 DPR___ (2024) 2024 TSPR 70, pág. 16 . Al evaluar una determinación administrativa, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. USAA Fed. Savs. Bank.,* 214 DPR___ (2024) 2024 TSPR 70, pág. 9.

A tenor con lo anterior, los tribunales deben deferencia a las agencias administrativas salvo que: (1) las determinaciones no estén basadas en evidencia sustancial; (2) las conclusiones de derecho fueran incorrectas; (3) la agencia actuara de forma arbitraria, irrazonable o ilegal; o (4) que lesionara derechos fundamentales. *Super Asphalt v. AFI y otros*, 206 DPR 803, 14 (2021). En ausencia de ello, "aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida". *Super Asphalt v. AFI y otros, supra*; *ECP*

*Incorporated v. OCS*, 205 DPR 268 (2020). Aun así, "las determinaciones de derecho pueden ser revisadas en su totalidad". *Capó Cruz v. Jta. de Planificación et al.*, 204 DPR 581, 591 (2020).

### B. Proyecto para la Pre-Reinserción a Libre Comunidad

La Sección 19 del Artículo VI de la Constitución de Puerto Rico, LPRA Tomo I, decreta como política pública del Estado "el reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Como corolario de este mandato, el Plan de Reorganización del Departamento de Corrección y Rehabilitación, Núm. 2 de 21 de noviembre de 2011, según enmendado, 3 LPRA, Ap. XVIII, Art. 2, ("Plan de Reorganización") aspira a "la creación de un sistema integrado de seguridad y administración correccional en donde las funciones y los deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad".

El Artículo 7 del Plan de Reorganización, *supra*, reconoce el establecimiento del Departamento de Corrección y Rehabilitación ("DCR") como el organismo responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación. 3 LPRA, Ap. XVIII, Art. 4. Este cuerpo legal faculta al Secretario del DCR a adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, entre otros, para el funcionamiento efectivo de la agencia bajo su jurisdicción. 3 LPRA, Ap. XVIII, sec. 7 (aa) (supl. 2024).

En virtud de esas facultades, el 7 de septiembre de 2023, el DCR adoptó la Orden Administrativa DCR-2023-03 intitulada *Proyecto para la Pre-Reinserción a la Libre Comunidad* ("Orden Administrativa"). Esta medida agencial procura que "los miembros de la población correccional se adapten a la vida en libre comunidad

a los fines de que se conviertan en personas independientes y productivas para nuestra sociedad y reconozcan que se encuentran ante una nueva oportunidad de vida". Introducción de la Orden Administrativa, *supra*, pág. 3. Por medio de esta iniciativa, éstos **convivirán en una facilidad correccional, similar a las condiciones que podrían encontrarse una vez estén en la libre comunidad**. Introducción de la Orden Administrativa, *supra*, págs. 2-3.

El apartado IV de la Orden Administrativa, *supra*, fija los criterios de elegibilidad para participar del Proyecto para la Pre-Reinserción a la Libre Comunidad. A esos fines, la Orden Administrativa, *supra*, establece los siguientes requisitos que debe exhibir el solicitante de este beneficio:

1. No tener resoluciones administrativas disciplinarias en su contra durante los últimos seis (6) meses. Tampoco puede tener procesos disciplinarios pendientes de, resolver.

2. Estar clasificados en custodia mediana o mínima.

3. No tener pendiente procesos criminales ante los tribunales.

4. Podrá estar disfrutando de pases familiares sin custodia.

5. Haber satisfecho la Pena Especial impuesta o poseer un plan de pago, conforme a la Ley Núm. 183-1998, según enmendada, conocida corno "Ley de Compensación a las Víctimas de Delito".

6. Debe estar en cumplimiento con lo dispuesto en las siguientes leyes a) Ley Núm. 175-1998, según enmendada, conocida como "Ley del Banco de Datos de ADN de Puerto Rico". b) Ley Núm. 243-2011, según enmendada, "Registro de Personas Convictas por Delitos Sexuales y Abuso Contra Menores".

7. Deberá restarle diez (10) años o menos para cumplir el mínimo de la sentencia.

8. Debe estar cumpliendo con el Plan Institucional asignado favorablemente y presentar buenos ajustes institucionales. Esto debe estar certificado por el Técnico de Servicios Sociopenales y contar con el visto bueno del supervisor.

9. En los casos datos miembros de la población correccional que tengan historial de uso de sustancias controladas o alcohol, deberán haberse beneficiado de tratamiento contra la adicción.

10. En los casos de los miembros de la población correccional convictos por infracción a la Ley Núm. 54 del 15 de agosto de 1989, conocida como la "Ley para la Prevención e Intervención con la Violencia Doméstica" o de algún delito de naturaleza sexual, previo a ser considerados para

participar del Proyecto, deberán haberse beneficiado del programa Aprendiendo a Vivir Sin Violencia y contar con la recomendación favorable del terapista/ psicólogo.

11. En los casos en que el miembro de la población correccional haya incurrido en el delito de fuga o en la comisión de un nuevo delito, deberá haber transcurrido un mínimo de tres (3) años desde la fecha en que fue sentenciado. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional.

12. En los casos en que el miembro de la población correccional haya incurrido en violación a las normas y condiciones de algún programa previo, podrá ser considerado solamente por una segunda ocasión adicional, luego de haber transcurrido un mínimo de dieciocho (18) meses desde el incumplimiento. Además, tendrá que haber completado el tratamiento recomendado en su Plan Institucional. No se considerará para participar del programa si incurrió en la comisión de un nuevo delito durante el disfrute del privilegio.

13. **No constituir un riesgo para su propia seguridad, la de sus compañeros, la comunidad y as víctimas o partes perjudicadas.**

14. Tener una actitud positiva y tener la disposición genuina de trabajar, estudiar, rendir tas tareas que se le requieran y de ser orientado en las áreas que sean necesarias.

15. Deberá estar en disposición y actitud favorable para que el patrono, la institución educativa o el centro de tratamiento, pueda darle seguimiento y supervisión a su trabajo, estudios o tratamiento, según aplique.

16. Estar dispuesto (el confinado o un familiar) a sufragar los costos que conlleve su Supervisión Electrónica, la cual será constante mientras participe del Proyecto, y cualquier otro gasto en el cual incurra, entre ellos, los gastos básicos por los servicios de agua y luz, alimentos y vestimenta. (Énfasis nuestro) IV (A), Orden Administrativa, págs. 4-6.

De acuerdo con la aludida Orden, "será excluida para participar de este Programa, toda persona **convicta de delito grave a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual**, conforme a las disposiciones del Código Penal de Puerto Rico". (Énfasis nuestro) IV (B), Orden Administrativa, *supra,* pág. 6. Asimismo, aquel miembro de la población correccional que interese participar del Proyecto de Pre Reinserción **será supervisado mediante dispositivo electrónico por el Sistema de Posicionamiento Global ("GPS")**. IV (D), Orden Administrativa, *supra,* pág. 9. De igual manera, los participantes serán sometidos periódicamente a pruebas de dopaje, IV (E), Orden Administrativa, *supra,* pág. 9, y además, estarían sujetos a medidas

disciplinarias si se incumplen con las normas establecidas en la Orden Administrativa. VII, Orden Administrativa, *supra,* pág. 15.

### C. *Programas de Desvío de la Población Correccional*

De igual manera, mediante la aprobación del Plan de Reorganización Núm. 2-2011, conocido como Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011 (Plan de Reorganización), 3 LPRA Ap. XVIII, Art. 2, se decreta como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de los ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, con el fin de fomentar su reincorporación a la sociedad.

Dicho Plan de Reorganización establece las funciones, facultades y deberes del Departamento de Corrección, entre las cuales se encuentran: a) clasificación adecuada y revisión continua de la clientela conforme a los ajustes y cambios de ésta; b) así como estructurar la política pública correccional de acuerdo con este Plan y establecer directrices programáticas y normas para el régimen institucional. Art. 5 (a)(c) del Plan de Reorganización, 3 LPRA Ap. XVIII.

Ahora bien, el Plan de Reorganización define *programa de desvío* como aquel "programa establecido para que las personas convictas **cumplan parte de su sentencia fuera de la institución correccional**, sujeto a los criterios y condiciones establecidos mediante reglamentación" (Énfasis nuestro). 3 LPRA, Ap. XVIII, Art. 3 (w). Del mismo modo, estos programas del desvío deben seguir los lineamientos establecidos en los Artículos 15 al 23 del Plan de Reorganización. En lo pertinente, el Artículo 16 establece:

El Secretario establecerá mediante reglamento los objetivos de cada programa de desvío, cómo habrán de operar, los criterios y condiciones para la concesión de dicho privilegio, así como también los criterios, condiciones y proceso que habrá de seguirse para la revocación del privilegio y administrará los programas de desvío donde las personas convictas puedan cumplir parte de su sentencia fuera de la institución correccional. La opinión de la víctima habrá de tomarse en consideración como uno de los criterios para conceder el privilegio de ubicar a un miembro de la población correccional en un programa de desvío. **No serán elegibles para participar en los programas de desvío establecidos por el Departamento las siguientes personas**:

    a)  toda persona convicta que esté cumpliendo sentencia por los siguientes delitos:

        1)  Producción, posesión y distribución de pornografía y la utilización de un menor para la pornografía infantil;

        2)  violaciones a la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "Ley de Sustancias Controladas de Puerto Rico", excepto las violaciones al Artículo 404 de dicha Ley;

        3)  y violaciones a la Ley Núm. 134 de 28 de junio de 1969, según enmendada, conocida como la "Ley de Explosivos de Puerto Rico";

        4)  toda persona convicta por delito grave de primer grado. 3 LPRA, Ap. XVIII, Art. 16 (supl. 2024)

### III.

En el presente recurso, el señor Guilbe Crespo solicita nuestra intervención para que revoquemos la determinación de la agencia recurrida, la cual denegó su solicitud para participar en el Proyecto de Pre-Reinserción ("Proyecto") para el Centro de Rehabilitación y Nuevas Oportunidades de Arecibo ("CRNO") adscrito al DCR. La razón para tal proceder obedeció a que el Recurrente debía someter otro plan de salida fuera del municipio de Ponce. Por su parte, el DCR, esgrime que en situaciones en el que un confinado solicita participar en este tipo de programas, es importante tomar en consideración la opinión de la víctima. Por este motivo, la agencia sostiene que la determinación de denegar la participación del Recurrente al Proyecto, ya que este debe someter otro plan de salida con otro municipio que no fuera Ponce, es correcta en derecho, toda vez que los perjudicados residen en dicho municipio. Veamos.

De entrada, nos parece importante resaltar lo expresado por el DCR en su *Escrito en Cumplimiento de Resolución* en torno a que el Proyecto **no es un programa de desvío**, pues el mismo se lleva a cabo en una facilidad correccional. En cuanto a esto último, el DCR especificó que el *Reglamento del Programa Integral de Reinserción Comunitaria,* Reglamento Núm. 9488 de 9 de agosto de 2018, el cual regula los programas de desvío adscritos al DCR, **no incluye** al CRNO que fue el programa específico en el que se le denegó la participación al Recurrente. Es decir, el DCR categóricamente sostiene que el CRNO **no es un programa de desvío**. Para fundamentar esta aseveración, el DCR anejó una *Certificación* con fecha del 13 de marzo de 2025 firmada por Dalixi L. Rivera Díaz, Jefa del Programas de Desvíos y Comunitarios, mediante la cual explicó que, dado a que el Proyecto "está ubicado en una facilidad correccional [...] **no se considera un programa de desvío conforme al reglamento Número 9488**" (Énfasis nuestro).[11]

Cónsono con lo anterior, el DCR afirma que los participantes del CRNO "están sometidos a las mismas normas de seguridad y a la supervisión del DCR, de forma constante y diaria, como si residiesen en una institución correccional clásica".[12] Es por eso que, pese a que los participantes salen a trabajar o estudiar, ellos regresan **diariamente a sus viviendas dentro del CRNO** contrario a un confinado que participa en un programa de desvío, quien cumple el resto de su residencia en su propia residencia mediante monitoreo electrónico. Asimismo, el DCR aduce que los participantes del CRNO se rigen por el reglamento disciplinario de la agencia recurrida, por las normas referentes a las bonificaciones

---

[11] Véase, Anejo 1 del *Escrito en Cumplimiento de Orden* presentado por el DCR, pág. 1.
[12] Véase, *Escrito en Cumplimiento de Orden* presentado por el DCR, pág. 5

por trabajo y estudio y se someten periódicamente a pruebas de dopaje.

Ponderados los argumentos previamente esbozados por el DCR, y la prueba que la agencia anejó junto a su *Escrito en Cumplimiento de Resolución,* resolvemos que el Proyecto no es un programa de desvío conforme lo establece el Plan de Reorganización, *supra.* Es preciso recordar que el aludido Plan de Reorganización define programa de desvío como aquel "establecido para que las personas convictas cumplan parte de su sentencia **fuera de la institución correccional**, sujeto a los criterios y condiciones establecidos mediante reglamentación" (Énfasis Nuestro). 3 LPRA, Ap. XVIII, sec. 3 (w) (Supl. 2024). Ese no es el caso con el Proyecto, pues este se lleva a cabo en una facilidad correccional como es el caso del CRNO.[13] Aclarado lo anterior, corresponde determinar si la determinación de la agencia recurrida fue correcta en derecho.

Es menester destacar que el Proyecto es regulado por la Orden Administrativa DCR 2023-03 ("Orden Administrativa"). Conforme surge de la introducción de la Orden Administrativa, esta iniciativa tiene el propósito de que los miembros de la población correccional **convivan en una facilidad correccional** con condiciones similares a la que podrían encontrarse una vez estos estén en la libre comunidad. Asimismo, reza la aludida Orden Administrativa, que el enfoque principal del Proyecto es "proveerles empleo, programas de estudio o de tratamiento en diversas áreas que serán establecidas, conforme se desarrollen las oportunidades, por determinado espacio de tiempo, y percibiendo un salario establecido que no será menor al salario mínimo federal para el caso de los que disfruten de la

---

[13] Véase, Anejo 2 del *Escrito en Cumplimiento de Orden* presentado por el DCR, pág. 2. En este documento intitulado *Proyecto Optimización - Recopilación Data Servicios/Programas Institucionales sobre Institución* se clarifica que el CRNO "es una facilidad correccional similar, similar a las condiciones que podrían encontrarse una vez estén en la libre comunidad".

vertiente de trabajo". Introducción de la Orden Administrativa, *supra*, pág. 3.

Ahora bien, el Apartado IV de la mencionada Orden Administrativa, **enumera los criterios de elegibilidad** para participar en el Proyecto. De una lectura de dicho apartado, notamos que no hay mención alguna o restricción en torno al lugar de vivienda dispuesto en el plan de salida del miembro de la población correccional. No obstante lo antes expuesto, el criterio número trece (13) del aludido apartado establece como requisito que el participante no puede constituir un riesgo para las víctimas. En el presente caso, del *Resumen de Hallazgos Entrevista a V[í]ctima*, se desprende que los padres de la víctima en ese caso **no manifestaron sentirse amenazados** por la participación del señor Guilbe Crespo en el Proyecto. Aun así, los familiares de la víctima se opusieron a que el Recurrente participe en el mismo.[14] Es preciso destacar, que no hay requisito de elegibilidad alguno que disponga que el municipio al que el Recurrente alude en su plan de salida no puede ser el mismo municipio en el que resida la víctima o sus familiares. De igual forma, no dispone sobre cercanía, simplemente se limita a establecer que no puede constituir un riesgo para la víctima. Asimismo, es pertinente subrayar que lo que se le denegó al señor Guilbe Crespo fue participar en el CRNO sito en el municipio de Arecibo.

Por otra parte, el Apartado IV (B) de la Orden administrativa dispone que serán excluidos de participar en el Proyecto, "toda persona convicta de delito grave, a la cual se le haya hecho una determinación de reincidencia agravada o reincidencia habitual conforme a las disposiciones del Código Penal de Puerto Rico". Ese no es el caso del Recurrente.

---

[14] Véase, Apéndice del Procurador General, pág. 2.

En vista de lo previamente expuesto, colegimos que, según el expediente ante nos, el señor Crespo Guilbe cumple con los requisitos de elegibilidad para participar en el Proyecto los cuales están contenidos en la Orden Administrativa. Por consiguiente, a tenor con los fundamentos previamente discutidos, concluimos que el DCR incidió al denegar la participación del Recurrido al CRNO.

**IV.**

Por los fundamentos antes expuestos, **revocamos** el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones